UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN PARISI,

                Petitioner,

- against -

DALE ARTUS, Superintendent of Clinton
Correctional Facility,

                Respondent.
----------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ DEC 01, 2010
P.M.
TIME A.M.

**MEMORANDUM AND ORDER**

08-CV-1785 (ENV)

**VITALIANO, D.J.**

Pro se petitioner John Parisi has filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the writ is denied, and the petition is dismissed.

## I. BACKGROUND

### A. Crime and Conviction

On the evening of February 13, 2001, Melanie Castillo was in her car, stopped at a red light. A man, whose face was obscured by a hood, opened the driver's side door and pushed Castillo towards the passenger seat. She saw that the man was holding a piece of wood. He demanded all her cash and drove the car to a wooded area, where he forced her to perform oral sex and then raped her before fleeing. Castillo was examined at a hospital that evening, and her sexual assault kit, which included the underwear she had worn that night, was turned over to police the next day. Parisi was questioned by the police immediately after the incident, but he denied any knowledge of the crime. No arrest was made at that point as the police concluded there was insufficient cause to arrest Parisi at that time.



1

On March 2, 2001, a resident who lived near the intersection where the car-jacking had occurred saw a man, fitting the description of the perpetrator in the Castillo rape, acting suspiciously and following a woman. Around the same time and place, two other witnesses saw a man fitting this same description. When two police officers arrived in response to a radio call, they found a man who appeared highly intoxicated. Spying the officers, the man started yelling at them and reached for a "bulge at his right side," (Resp. Memo. 10), later revealed to be a piece of wood. Trying to resist arrest, the suspect elbowed one officer in the face, and started swinging a vodka bottle. The men tumbled to the ground, and the suspect started kicking and punching the officers. With the help of additional officers, the suspect was subdued and arrested. He was later identified as petitioner Parisi.

Physical arrest did not fully subdue Parisi, as the restraints did not prevent him from spitting at the officers. The arresting officers used a yellow blanket to cover his upper body and head. Another officer went to the scene of the altercation, recovered a jacket, and swabbed a number of stains there; she later recovered the yellow blanket from the garbage can in the room where Parisi was held. DNA samples from the blanket and the scene of the altercation were sent to the crime lab to be compared to DNA from semen found on the underwear Castillo was wearing on the night of the rape.

On June 6, 2001, the crime lab determined that the DNA samples collected from the March 2, 2001 altercation matched the sample from Castillo's underwear. Parisi was indicted on July 9, 2001, charged with rape in the first degree, sodomy in the first degree, kidnapping in the second degree, robbery in the third degree, and unauthorized use of a motor vehicle in the first degree. Parisi was also separately indicted for the altercation on March 2, 2001, charged with

two counts of assault in the second degree, one count of menacing in the second degree, one count of resisting arrest, and two counts of disorderly conduct.

On May 2, 2001, Parisi was indicted again, this time on an unrelated rape charge. On July 24, 2001, the judge in the unrelated case ordered petitioner to submit DNA samples; a buccal swab was taken from him on July 27, 2001.[1] On July 31, 2001, the Suffolk County District Attorney's Office requested that the crime lab analyze samples from (1) the semen on Castillo's underwear, (2) the yellow blanket, and (3) petitioner's buccal swab, to see if they all came from the same individual. The DNA results all matched.

The indictments for the attack on Castillo and for the police altercation were consolidated with the consent of petitioner's trial counsel. At the consolidated trial, Castillo testified in detail about the events of February 13, 2001; several other prosecution witnesses testified that they saw a strange man wearing a hooded sweatshirt, at the same intersection where Castillo had been abducted at around the time of the abduction. Other prosecution witnesses gave similar testimony about seeing a suspicious, inebriated man on March 2, 2001. One of those witnesses testified further that the suspicious man appeared to be following a young woman. The officers involved in the altercation with Parisi testified about their resulting injuries. Finally, the People presented the evidence of the DNA match.

On August 29, 2002, the jury convicted Parisi of rape in the first degree, sodomy in the first degree, kidnapping in the second degree, robbery in the third degree, unauthorized use of a motor vehicle in the first degree, one count of assault in the second degree, menacing in the second degree, resisting arrest, and one count of disorderly conduct. The jury acquitted Parisi of one count of assault in the second degree and one count of disorderly conduct. On November 6,

---

[1] Petitioner's trial under this unrelated indictment commenced in May of 2002; he was acquitted June 6, 2002.

3

2002, Parisi was sentenced as a second violent felony offender and given an aggregate sentence of 57 years, later administratively lowered to 50 years.

## B. Post-Conviction Procedural History

Parisi appealed his convictions to the Appellate Division, Second Department, where he argued: (1) that the trial court's failure to instruct the jury regarding circumstantial evidence required reversal of his conviction; (2) that he had been denied effective representation of counsel because counsel failed to object to the consolidation of the indictments and failed to request a jury charge on circumstantial evidence; (3) that the People had failed to prove guilt beyond a reasonable doubt; (4) that his sentence was illegal under New York law; and (5) that his sentence was harsh and excessive.

While his direct appeal was pending, Parisi filed a motion to vacate judgment in Suffolk County Supreme Court, pursuant to New York Criminal Procedural Law § 440.10, arguing that he had received ineffective assistance of counsel because his counsel had failed to move (1) to suppress the DNA evidence obtained from the yellow blanket and (2) for a protective order preventing the prosecution from using the buccal swab collected in the unrelated rape case. On January 31, 2005, Supreme Court denied the motion on procedural grounds, finding that sufficient facts appeared on the record for the Appellate Division to review adequately the issues brought in the § 440 motion. On March 23, 2005, Parisi applied to the Second Department for leave to appeal Supreme Court's adverse decision. His application was denied on November 22, 2005. Parisi then filed a pro se supplemental brief in his pending direct appeal to the Second Department in which he repeated the arguments he made in his § 440 motion.

The Appellate Division rejected all of Parisi's claims on March 20, 2007. People v. Parisi, 38 A.D.3d 799, 833 N.Y.S.2d 129 (2d Dep't 2007). The court found that (1) the evidence

was legally sufficient to establish Parisi's guilt beyond a reasonable doubt; (2) the issue regarding a jury instruction on circumstantial evidence was not preserved for appellate review; (3) the imposition of consecutive sentences was proper under New York law; (4) the sentences imposed were not excessive; and (5) the remaining contentions were without merit. On June 5, 2007, Parisi's application for leave to appeal was denied by the New York Court of Appeals. People v. Parisi, 9 N.Y.3d 849, 840 N.Y.S.2d 775, 872 N.E.2d 888 (2007).

Parisi filed the instant pro se petition on April 28, 2008, raising the identical issues he advanced on his direct appeal. He also argues, for the first time, that the state court abused its discretion when it denied his § 440.10 motion without a hearing.

## II. STANDARD OF REVIEW

This petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a federal writ of habeas corpus may not be granted to a state prisoner with respect to any claim that was adjudicated on the merits by a state court unless the decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000) (under AEDPA, habeas relief is only available if "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." (citation omitted)).

In the AEDPA context, the term "clearly established federal law" is construed as "'refer[ring] to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at

5

412, 120 S. Ct. at 1495). Further, to be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (quotation omitted). Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

### A. Jury Instruction on Circumstantial Evidence

Petitioner first argues that the trial court erroneously failed to instruct the jury regarding the difference between direct and circumstantial evidence. This claim is not cognizable on federal habeas review. There is no federal constitutional right to a circumstantial evidence charge. See Martinez v. Reynolds, 888 F. Supp. 459, 464 (E.D.N.Y. 1995) (denying habeas relief in part because "the constitutional right to due process does not require a court to give ... special jury instructions when a case is founded on circumstantial evidence.") (citing Holland v. United States, 348 U.S. 121, 140, 75 S. Ct. 127, 137-38 (1954)). The absence of a circumstantial evidence charge presents no federal constitutional infirmity. To the extent petitioner's claim is grounded in state law exclusively, the claim is unreviewable by a federal habeas court. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).[2]

---

[2] Additionally, petitioner did not request this jury charge during the trial, and the Appellate

B.  **Ineffective Assistance of Counsel**

Parisi raised his claims of ineffective assistance of trial counsel on direct appeal, supplemented by the arguments made in his failed § 440.10 motion. He contends that counsel (1) agreed to the consolidation of two indictments when no strategic reason existed to do so, (2) failed to request a jury instruction regarding circumstantial evidence, (3) failed to move to suppress the DNA collected from the March 2, 2001 incident, and (4) failed to move to suppress the buccal swab collected in the unrelated rape case.

It is unchallenged that this claim was exhausted in the state courts, since it clearly was presented to the highest state court with sufficient particularity to alert the court as to its constitutional nature. See Ramirez v. Attorney General of State of N.Y., 280 F.3d 87, 94-95 (2d Cir. 2001). Although the Second Department did not specifically address the ineffective assistance of counsel argument, it did find that petitioner's "remaining contentions [were] without merit." People v. Parisi, 38 A.D.3d 799, 800, 833 N.Y.S.2d 129, 129 (2d Dep't 2007). As a result, the claim is to be analyzed with AEDPA deference. See Sellan, 261 F.3d at 311-12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.") (quotation omitted).

For ineffective assistance claims under AEDPA, it is well-settled that Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), and its progeny sets the applicable federal standard. The question presented is whether the state court adjudication of Parisi's claim

---

Division held that it was unpreserved for appellate review. People v. Parisi, 38 A.D.3d 799, N.Y.S.2d 129 (2d Dep't 2007). Any claim on this ground, therefore, was also procedurally defaulted. See, e.g., Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007).

7

involved an "unreasonable application" of the Strickland standard to the facts of his case. See Sellan, 261 F.3d at 314-15 & n.6.

In Strickland, the Supreme Court held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under Strickland, to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (quotations omitted).

To establish subpar performance, a habeas petitioner must overcome the "strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (quotations omitted). The presumption is overcome only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S. Ct. at 2068.

The state courts determined that the Strickland standard had not been offended, and those determinations were neither contrary to, nor unreasonable applications of, Strickland and its progeny. The Court addresses each of petitioner's specific ineffectiveness arguments in turn.

1. Failure to Object to Consolidation

Petitioner argues that trial counsel was ineffective for failing to object to consolidation of two of his indictments, that is, the two charging the attack on Castillo and the altercation with

8

police, for no "apparent strategic reason." (Pet. 3.) Yet Parisi's counsel stated that, even if the People had not moved to join the cases, he would have done so as a matter of defense strategy. (Pet. Brief to App. Div. 30.) Strategic choices, if reasonable at the time they were made, cannot constitute a basis for an ineffective assistance claim. See Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Counsel's actions or omissions fall outside the range of reasonableness only if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude or laziness." Eze v. Senkoski, 321 F.3d 110, 112 (2d Cir. 2003). There is no evidence that counsel's consent to consolidation arose from indolence, incompetence, or oversight; rather the record suggests the presence of a strategic defense plan. Thus the state courts were reasonable in rejecting this claim.

2. Failure to Request Jury Instruction

Petitioner argues that his trial counsel was ineffective for failing to seek a jury instruction on circumstantial evidence. New York state law affirms entitlement to a circumstantial evidence charge in some cases. See People v. Benzinger, 36 N.Y.2d 29, 32, 324 N.E.2d 334, 364 N.Y.S.2d 855 (1974). But even if it is assumed that the charge was warranted and that failure to seek it constituted ineffective assistance, petitioner's argument fails because he was not prejudiced by the absence of the charge. "[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus." Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) (citing Lindstadt v. Keane, 239 F.3d 191, 204 (2d

9

Cir. 2001)). When a circumstantial evidence charge would not have changed the jury's guilty verdict, no prejudice exists. See, e.g., Clark v. Kelly, No. 98-CV-6230, 2002 WL 31663512, at *7 (W.D.N.Y. Oct. 3, 2002). Here, two different DNA tests determined that petitioner's semen was on the underwear the victim was wearing on the night of the rape. There was no evidence that Parisi ever had a consensual relationship with Castillo. Eyewitnesses testified that a man resembling Parisi was at the scene of the abduction around the time it occurred and again on the day petitioner was arrested. And two officers provided direct testimony of their altercation with Parisi, near the abduction site, in which he brandished a piece of wood, just as the perpetrator had done. In short, had the charge been given and applied to such evidence by the jury, the result would not have differed. This is a clear case where "overwhelming evidence of guilt" outweighs any possible error petitioner's counsel may have committed, and thus the Court finds no prejudice under Strickland.

### 3. Suppression of DNA Evidence from the Yellow Blanket

Petitioner also argues that his trial counsel should have moved to suppress both the DNA evidence obtained from the March 2, 2001 altercation and the DNA obtained from the July 27, 2001 buccal swab. Where an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under Strickland requires that the underlying suppression claim was "meritorious" and that "there is a reasonable probability that the verdict would have been different absent the excludable evidence." Maldonado v. Burge, 697 F. Supp. 2d 516, 525 (S.D.N.Y 2010) (quoting Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986)).

When challenging the fruits of a search in the context of a New York state criminal prosecution, a successful suppression claim requires demonstration of a reasonable expectation

10

of privacy in whatever was searched. See People v. Ramirez-Portoreal, 88 N.Y.2d 99, 108, 666 N.E.2d 207, 212, 643 N.Y.S.2d 502, 506 (1996); see also California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy.") (quotation omitted). A person has a constitutional expectation of privacy if (1) he or she "manifested a subjective expectation of privacy in the object of that search" and (2) "society is willing to recognize that expectation as reasonable." Ciraolo, 476 U.S. at 211, 106 S. Ct. at 1811.

Parisi has not, however, demonstrated a bona fide subjective expectation of privacy in the yellow blanket or the DNA he left on it. Although he claims that the blood was "beat out of him" and that the blanket was taken away from him (Pet. Traverse Resp. 2), this self-serving statement is not supported by the record. The blood ended up on the blanket as a result of Parisi's own actions. The officers testified that Parisi was being abusive and started spitting at them, and it was necessary to cover his head with the blanket. The blanket was then found in or under the garbage in the holding room, and there is no evidence to suggest Parisi had any property or other interest at all in the blanket or his abandoned DNA sample until he filed his § 440.10 motion nearly three years later. Therefore the Court does not credit Parisi's assertion that he had a subjective expectation of privacy in the blanket.

Second, even if a subjective expectation of privacy existed, that expectation was not objectively reasonable. As for the blanket, a suspect arrested upon probable cause does not have a reasonable expectation of privacy in items discarded while in police custody, even if his DNA is later collected from them. See, e.g., Roe v. Marcotte, 193 F.3d 72, 80 (2d Cir. 1999) ("With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment.") (quoting Jones v. Murray, 962

F.2d 302, 306 (4th Cir. 1992)); People v. Ayler, No. 3217/2003, 2004 WL 2715317, at *4-5 (N.Y. Sup. Ct. Sep. 22, 2004) (finding no reasonable expectation of privacy in cigarette butts discarded in police interview room); People v. Sterling, 57 A.D.3d 1110, 1112, 869 N.Y.S.2d 288 (3d Dep't 2008) (finding no reasonable expectation of privacy in discarded milk carton). For example, Ayler involved a suspect in police custody who had smoked in the interview room; his DNA was later collected from the discarded cigarette butts, yielding a DNA match with semen recovered from sexual assault kits from three different victims. The court there held that "defendant could have no reasonable expectation of privacy in the ... interview room or in any items he discarded there," and further that it is "not reasonable to expect that garbage discarded in a police interview room would remain undisturbed out of respect for the privacy of the person who left it there." Ayler, 2004 WL 2715317, at *5. That conclusion is no less true here. Parisi had no reasonable expectation of privacy in the holding room, any item left in the garbage there, or in the DNA that was collected from the blanket. See, e.g., United States v. Amerson, 483 F.3d 73, 85-86 (2d Cir. 2007) ("[W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it.") (quoting Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992)).

Petitioner's arguments to the contrary are not persuasive. The case on which he relies, Matter of Abe A., 56 N.Y.2d 288, 452 N.Y.S.2d 6, 437 N.E.2d 265 (1982), involved the forcible taking of blood samples without probable cause, which did not occur here. Quite to the contrary, petitioner spit onto the yellow blanket in the course of resisting arrest, providing a voluntary sample. Accordingly, it is plain that petitioner's trial counsel would have failed on a motion to suppress the DNA from the yellow blanket, and "[f]ailure to make a meritless argument does not

amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). The state adjudication of this issue was thus more than reasonable.

### 4. Suppression of DNA Evidence from Buccal Swab

The petition also avers that counsel was ineffective for failure to move to suppress the DNA evidence collected from the buccal swab taken pursuant to court order on July 27, 2001. This argument too is unavailing, as the state court determination was reasonable and should not be disturbed.

Parisi bases the argument on New York Executive Law § 995-d and its interpretation in People v. Rodriguez, 196 Misc. 2d 217, 764 N.Y.S.2d 305 (N.Y. Sup. Ct. 2002). Significantly, Parisi misreads both § 995-d and Rodriguez. New York courts have held that "reliance on Executive Law § 995-d is unavailing to [support a] claim of suppression. There is nothing in the statute which provides for such a remedy for misuse or improper dissemination of DNA information in the context of a criminal prosecution." People v. Midgeley, 196 Misc. 2d 19, 28, 763 N.Y.S.2d 419, 426 (N.Y. Sup. Ct. 2003); Rodriguez, 196 Misc. 2d at 226, 764 N.Y.S.2d at 312. Rodriguez interpreted § 995-d to hold that DNA evidence from one case may be disclosed to the court, prosecution, and defense in another case "when a criminal action has been commenced," i.e., "when the People have a person who is alleged to have committed a charged crime." Rodriguez, 196 Misc. 2d at 226, 764 N.Y.S.2d at 312. Here, by the time the buccal swab was taken on July 27, 2001, Parisi had already been charged and indicted for the rape of Castillo, i.e., a criminal action had been commenced against Parisi alleging that he was the perpetrator in the Castillo case. There was no violation of § 995-d, and there was no legitimate ground to support a motion to suppress the DNA results from the buccal swab. Consequently, Parisi's counsel cannot be declared ineffective on this basis.

## C. Insufficient Evidence

Petitioner also contends that there was insufficient evidence supporting his convictions. The state courts found this argument meritless. Federal constitutional precedents do not countenance disturbing that conclusion. The standard for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Petitioner "bears a very heavy burden" in meeting this standard. United States v. Rivalta, 892 F.2d 223, 227 (2d Cir. 1989) (citations omitted). "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence ... and this evidence must not be reviewed piecemeal, but rather as a whole." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted). Moreover, "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and courts must "defer to the jury's assessments of both of these issues." Id. (citations omitted).

Parisi has not met the burden established by Jackson. Viewed as a whole and in the light most favorable to the People, the evidence against Parisi, though circumstantial, was more than sufficient for a rational jury to convict him. Two different DNA tests matched Parisi's DNA with the DNA in the semen on Castillo's underwear; Parisi does not, and essentially cannot, contest the accuracy of those test results. See McKithen v. Brown, 565 F.Supp.2d 440, 481 (E.D.N.Y. 2008) ("The results of modern DNA testing are of essentially unimpeachable reliability."), rev'd on other grounds, No. 08-4002-pr, 2010 WL 4671527 (2d Cir. Nov. 19, 2010). Furthermore, the DNA-based evidence of guilt was corroborated by eyewitness accounts placing a man of Parisi's description at the scene of the abduction on the same evening of the crime and then again on the day of his arrest. Additionally, the jury was also able to weigh the

testimony and evidence regarding the injuries Parisi caused to Officer Langella and were given the full account of the altercation, in which two officers testified that Parisi violently resisted arrest. The Court, as it must, will defer to the jury's assessments of the facts. See Maldonado, 86 F.3d at 35. The state court determinations to that effect were more than reasonable, and no writ can issue based on this contention.

### D. Sentencing Arguments

Petitioner reiterates and incorporates the same arguments regarding sentencing that he asserted in his direct appeal. Given that these claims rest exclusively on state law, they are not cognizable on federal habeas review. See 28 U.S.C. §2254(d); see also Estelle, 502 U.S. at 67-68, 112 S. Ct. at 480 (1991). ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").[3]

### E. Denial of the Section 440 Motion

Parisi also contends that the state court's denial of his § 440.10 motion based on ineffective assistance of counsel was contrary to federal law. (Pet.'s Supp. Memo at 20). This was not a claim included in Parisi's petition. But given that Parisi is a pro se litigant, the Court will construe the claim to be part of the habeas petition. See Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999). The Suffolk County Court denied the motion to vacate on procedural grounds pursuant to § 440.10(2)(c), determining that sufficient facts appeared on the

---

[3] Further, it is well-settled that the length of a prison sentence does not violate the Eighth Amendment prohibition on cruel and unusual punishment if it falls within the established statutory range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). Parisi's sentence is within the statutory range, and thus his challenge fails on this ground as well.

15

record for petitioner to have raised these claims on direct appeal. Petitioner now contests that denial, asserting that the state court failed to "make findings of fact" or "resolve factual disputes" and that this resulted in an unreasonable determination of the facts within the meaning of 28 U.S.C. §2254(d)(2). Parisi also contends that the state court's decision to reject his claims without holding an evidentiary hearing was an abuse of discretion. He further claims that he is entitled to an evidentiary hearing in the instant habeas case, but he has not formally moved for one.

These claims are not cognizable on habeas review. First, he presents these claims for the first time in his habeas petition, and he has not alleged that he ever asked for a hearing below. Before a state prisoner is entitled to review of his claims by a federal court, he must first present those claims and "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); see also O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999). Second, petitioner's supplemental brief to the Appellate Division indicates that the state court denied the motion on a procedural ground. Thus, the decision was based on an independent and adequate state ground and is procedurally barred. See Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991). Moreover, the Suffolk County Court acted well within its authority in not holding an evidentiary hearing on Parisi's § 440 motion. No such hearing is required when a decision can be reached based on the trial record and a defendant's submissions. See People v. Satterfield, 66 N.Y.2d 796, 497 N.Y.S.2d 903, 488 N.E.2d 834 (1985).

Finally, the Court finds no need to hold an evidentiary hearing on Parisi's habeas petition. Where a federal habeas petitioner is not barred from obtaining an evidentiary hearing by 28

U.S.C. § 2254(e)(2),[4] which is not applicable in this case, the decision to grant such a hearing is in the discretion of the district court. Schriro v. Ladrigan, 550 U.S. 465, 468, 127 S. Ct. 1933, 1937 (2007). Here, Parisi's submissions provide sufficient detail to allow the Court to adjudicate his claims on the merits. An evidentiary hearing is unnecessary.

## IV. CONCLUSION

For all of the foregoing reasons, Parisi's petition for a writ of habeas corpus is dismissed with prejudice, and the writ is denied. Since Parisi has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

---

[4] If an "applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (a) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (b) he facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2010

ERIC N. VITALIANO
United States District Judge